UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NICHOLAS CHITTICK, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No.: 20-cv-3252-JBM |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## MERIT REVIEW

Plaintiff, proceeding *pro se* and currently at the Jacksonville Correctional Center, files a complaint alleging deliberate indifference to his serious medical needs at the Graham Correctional Center ("Graham").The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## FACTS

Plaintiff names ten Defendants, Graham Warden Craig Foster, Assistant Warden Patricia Coke, Wexford Risk Manager Stephan Ritz, IDOC Medical Director Dr. Steve Meeks, Chief Medical Officer Dr. Francis Kayira, Physician's Assistant Timothy Adesanya, Nurse Barbee, Nurse Lydnsey, Nurse T. Havera and Wexford. For reasons unknown, Plaintiff identifies the

1

three nurses both by their names and as Doe Defendants #1-3. Plaintiff alleges that Defendants, collectively, failed to timely diagnose and treat his herniated cervical disc with the result that he has sustained severe spinal cord compression at C4-C5 and C5-C6 with residual disability.

Plaintiff indicates that he began experiencing symptoms of numbness and difficulty walking in mid-May 2018. He went to sick call on June 6, 2018 and was seen by Nurse Barbee, also identified as Jane Doe #1. Plaintiff asserts that Defendant Nurse Barbee conducted a physical exam but failed to appreciate his right hand weakness and right foot drop. Plaintiff was seen the following day, June 7, 2018, by Physician's Assistant Defendant Adesanya. Defendant Adesanya allegedly refused to examine Plaintiff, believing that he was faking his symptoms.

Plaintiff believed he needed to be seen by a neurologist and, on July 8, 2018, sent a letter to Assistant Warden Defendant Coke asking her to intervene. Defendant Coke did not respond, but forwarded the letter to the healthcare administrator. Plaintiff claims, without detail, that on July 30, 2018 Defendant Coke ordered him placed in disciplinary segregation/suicide watch. Plaintiff alleges that the heat was sweltering, there was no air-conditioning, and there were no electrical outlets in which to plug a fan. Plaintiff states that Defendant Coke did this in "retaliation," as she did not believe his symptoms were genuine.

On or about July 18, 2018, Plaintiff approached Defendant Warden Foster in the inmate lunchtime chow line. Plaintiff expressed concern about his declining neurological status and frustration in obtaining treatment. The Warden responded that he was not a physician; and what did Plaintiff expect him to do about it?

On August 2, 2018, Defendant Kayira requested that Defendant Dr. Stephen Ritz authorize Plaintiff's referral to an outside neurologist. Defendant Ritz denied the request with the result that Plaintiff was not seen by a neurologist until seen by Dr. Yoon Choi on November 21,

2018. Plaintiff asserts that Dr. Choi told him if treatment had been initiated back in August, he could have expected a complete or nearly complete recovery.

On August 2, 2018, Plaintiff was also seen by Nurse Lyndsey, identified as Jane Doe #2. He does not indicate whether Nurse Lyndsey provided him treatment, claiming only that she ridiculed Plaintiff as he struggled to walk in the lab, telling him that he was "not that good an actor!" On August 9, 2018, Defendant Kayira discharged Plaintiff from the health care unit, over Plaintiff's objection. Defendant Kayira allegedly denied that Plaintiff was suffering from neuromuscular dysfunction.

On or about September 1, 2018, Plaintiff directed a letter to IDOC Medical Director Defendant Steve Meeks, requesting intervention. The letter was returned to him two weeks later with the word "refused" handwritten on the envelope. It appears that Plaintiff was provided some treatment however, as on October 12, 2018, he was referred to an outside hospital for an MRI. When Plaintiff returned to Graham, Defendant Nurse Lyndsey noted in the record that he was stable and in no acute distress. Plaintiff claims that this notation was inaccurate as, at the time, he was barely able to walk.

On December 18, 2018, Plaintiff experienced severe spasms and was taken to the healthcare unit on a stretcher. There, he was seen by Defendant Nurse Haverra, also identified as Doe Defendant #3. Plaintiff does not indicate what treatment he received, claiming only that the Nurse remarked that his leg was shaking like that of a dog. On October 23, 2018, Defendant Nurse Barbee saw Plaintiff playing guitar in the chapel. Defendant Barbee allegedly responded sarcastically, indicating that it did not appear that Plaintiff was having trouble with his hand after all. She made a note to this effect in the medical record.

As noted, Plaintiff was seen by neurologist, Dr. Choi at the SIU Neuroscience Institute in Springfield, Illinois on November 21, 2018. Dr. Choi examined Plaintiff and determined that he needed emergency surgery, wanting him sent to the emergency room. Dr. Choi called the prison but was told that, pursuant to Wexford policy, Plaintiff could not be referred for surgery until it was authorized at collegial review. On December 13, 2018, Plaintiff was seen by neurosurgeon Dr. Espinosa and underwent surgery on January 5, 2019.

Plaintiff claims that in seven months between his initial June 6, 2018 visit to the healthcare unit and his January 5, 2019 surgery, he received no treatment save an ineffective physical therapy plan formulated by Defendant Kayira. Plaintiff alleges that "Defendants" were aware of his symptoms as he submitted more than a dozen sick call slips between June and October 2018. He asserts that Defendants accused him of faking his symptoms, ordered him to stop coming to sick call and placed him in disciplinary segregation/suicide watch on July 30, 2018.

Plaintiff alleges that the delay in treating his spinal cord compression has resulted in a progressive compressive myelopathy, cord edema, spinal cord atrophy resulting in permanent neurological dysfunction, spasticity, peripheral neuritis, decreased motor function in the legs, permanent right sided foot drop, decreased function in the right hand, decreased gastric motility, bowel and bladder dysfunction, genitourinary dysfunction and impotence. Plaintiff requests compensatory and punitive damages as well as declaratory relief.

Plaintiff also discloses that he previously filed these same claims in *Chittick v. Wexford*, No. 20-3075 (C.D. Ill. Mar. 24, 2020). The complaint there was dismissed without prejudice on July 8, 2020, for Plaintiff's failure to pay the filing fee. As the prior dismissal was without prejudice and, as Plaintiff has refiled within the applicable statute of limitations, there is no

impediment to Plaintiff refiling in this separate action. *See Harris v. Schaller*, No. 15- 397, 2018 WL 4603268, at *2 (W.D. Wis. Sept. 25, 2018) (plaintiff may file a new case after the first was dismissed for failure to pay the filing fee, subject to any statute of limitations defense.)

## ANALYSIS

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996). *See also, Pyles v. Fahim*, 771 F.3d 403, 411–12 (7th Cir. 2014) (healthcare providers may exercise their medical judgment when deciding whether to refer a prisoner to a specialist). The failure to refer is deliberately indifferent only if "blatantly inappropriate." *Id*. at 411-12. Denying a referral in favor of "easier and less efficacious treatment" may be blatantly inappropriate if it does not reflect sound professional judgment. *Petties v. Carter*, 836 F.3d 772, 729-30 (7th Cir. 2016), *as amended* (Aug. 25, 2016).

Plaintiff asserts against Nurse Barbee that on June 6, 2018, she conducted a physical exam and failed to note his right handed weakness and right foot drop. He also claims that on October 23, 2018, she sarcastically asked how Plaintiff was able to play guitar since he claimed to have diminished function in his hand. Neither incident, however, rises to the level of

culpability needed to plead deliberate indifference. This is so, as Plaintiff has pled that Defendant failed to appreciate his physical findings, not that she was aware of the risk his conditions posed and deliberately indifferent to it. *Antonelli,* 81 F.3d at 1427. Defendant's expressed disbelief that Plaintiff was as disabled as claimed, is more in the nature of an insult rather than deliberate indifference. The same applies to Defendant Nurse Lyndsay's comment on August 2, 2018 that Plaintiff was not a good actor and her October 12, 2018 notation that Plaintiff was in no acute distress.

Plaintiff also fails to plead deliberate indifference as to Defendant Nurse Haverra. Plaintiff only alleges that Defendant insulted him when he was taken to the healthcare unit on a stretcher. He does not claim that the Nurse failed to render him aid or to adequately treat him.

Plaintiff also fails to plead deliberate indifference as to Defendant Meeks. Plaintiff claims only that he wrote a letter to Defendant about the lack of care, and that the letter was returned to him with "refused" handwritten entry on the envelope. Plaintiff does not plead that Defendant Meeks received the letter and reviewed it, or had any knowledge of his complaints. The allegations against this Defendant are ambiguous and it might be that the letter was misdirected and returned to Plaintiff without Defendant Meeks ever having seen it.

Plaintiff pleads that Defendant Ritz was deliberately indifferent on August 2, 2018 when he denied Defendant Kayira's request to send Plaintiff to an outside neurologist. As previously noted, a physician is liable for a failure to refer only if that decision is "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 411–12 (7th Cir. 2014). The physician must have a "sufficiently culpable state of mind," that he actually knew of a substantial risk of serious harm and consciously disregarded it. *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). The Court cannot

determine, at this juncture, whether Defendant Ritz's refusal to refer Plaintiff in August 2018 was blatantly inappropriate. Accordingly, this claim shall proceed.

Plaintiff fails, however, to allege a deliberate indifference claim against Dr. Kayira. He does not plead that Defendant Kayira had the ability to overrule Defendant Ritz and refer Plaintiff without authorization. While he objected to Defendant discharging him from the healthcare unit on August 9, 2018, Plaintiff does not allege that this caused him injury. Plaintiff does not claim that he was receiving any particular treatment there and that he was harmed due to being discharged. Plaintiff's remaining claim is that Dr. Kayira formulated an ineffective physical therapy plan. This falls far short of pleading the culpable state of mind required for deliberate indifference. Defendant Kayira is DISMISSED.

Plaintiff pleads that on June 7, 2018, Defendant Adesanya refused to examine him, believing Plaintiff was faking. An alleged failure to provide any treatment is sufficient, at the pleadings stage, to support a deliberate indifference claim and this shall proceed. So, too, the claim that on July 18, 2018, Defendant Foster failed to act when told of Plaintiff's declining neurological status and lack of treatment. While a non-medical Defendant is entitled to rely on the opinions of medical staff, *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008), this does not hold true where medical staff has ignored the plaintiff. *Berry* v. *Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

Plaintiff alleges against Assistant Warden Defendant Coke that when he sent her a letter asking to be seen by a neurologist, she forwarded it to the healthcare administrator. Plaintiff does not indicate he had any further communication with Defendant Coke in this regard, or that she was aware that the referral to the healthcare administrator did not achieve results. *Hayes*, 546 F.3d at 527 (non-medical officials entitled to rely on actions of medical staff). Plaintiff also claims that

on July 30, 2018 Defendant Coke retaliated against him by placing him in disciplinary segregation where he was subject to atypical conditions. This claim, however, is not related to the deliberate indifference claim and represents a misjoinder. *See Ghashiyah v. Frank*, No. 05-0766, 2008 WL 680203, at *2 (E.D. Wis. Mar. 10, 2008) (defendants are properly joined in a single action only if they are parties to a single transaction or occurrence common to all defendants, and the claims against them involve a common question of fact or law); *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007), "[u]nrelated claims against different defendants belong in different suits." If Plaintiff wishes to proceed against Defendant Coke on a conditions of confinement or retaliation claim, he must plead it in a separate action.

As to Wexford, Plaintiff does not directly plead against this Defendant, asserting only that he was not taken for emergency surgery on November 21, 2018, due to a Wexford collegial review policy. Plaintiff does not assert, however, that this policy was unconstitutional or that Wexford applied it in an unconstitutional manner. As there is no *respondeat superior* liability under §1983, Wexford cannot be held liable for the acts of its employees unless they acted pursuant to an unconstitutional policy, practice or custom. *Salcedo-Vazquez v. Nwaobasi*, No. 13- 606, 2015 WL 7177231, at *7 (S.D. Ill. Nov. 16, 2015) citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015). Plaintiff does not sufficiently plead a claim against Wexford under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Wexford is DISMISSED.

**IT IS THEREFORE ORDERED:**

1.  This case shall proceed solely on the deliberate indifference claim against Defendants Adesanya, Foster and. Ritz. All other claims are dismissed and will not be included

in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15.

2. Plaintiff has filed a motion [3], and two letters [4] and [5], inquiring as to the status of this case. [3] is rendered MOOT by this order. Plaintiff is advised that, in the future, if he seeks relief of this Court, he is to file it in the form of a motion not a letter.

3. The Clerk is directed to send to Defendants pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

4. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

6. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the

Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

7. Once counsel has appeared for Defendants, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

8. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

9. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES;

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES; AND

3) ENTER THE STANDARD QUALIFIED PROTECTIVE ORDER PURSUANT TO THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE

WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).


| _ 2/5/2021_ | _s/Joe Billy McDade_ |
|---|---|
| ENTERED | JOE BILLY McDADE |
|  | UNITED STATES DISTRICT JUDGE |