E-FILED
Tuesday, 10 May, 2022  04:07:45 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

NICHOLAS CHITTICK,                          )
                                            )
                    **Plaintiff,**          )
v.                                          )        No.: 20-cv-3252-JBM
                                            )
FRANCIS KAYIRA, et al.,                     )
                                            )
                    **Defendants.**         )

### MERIT REVIEW ORDER – SECOND AMENDED COMPLAINT

Plaintiff, proceeding *pro se* and currently incarcerated at Robinson Correctional Center, files a second amended complaint alleging deliberate indifference to his serious medical needs at Graham Correctional Center ("Graham"). (Doc. 31). The Defendants are sued in both their individual and official capacities; however, no attempt has been made to plead a *Monell*-type proof of an official policy or custom as the cause of any constitutional violation. *Hafer v. Melo*, 112 S. Ct. 358, 361-62 (1981) (personal and official capacity suits distinguished). Consequently, the claims against the Defendants in their official capacity are dismissed with prejudice.

The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**FACTS**

Plaintiff alleges that at the time of the events pled herein he was suffering from a spinal compression in his cervical spine due to a disc herniation and that the delay of medical treatment caused harm and irreversible neurologic injury. Despite frequent exams and an eventual referral to a specialist, he claims that his treatment consisted of little more than the observation of his worsening condition. Plaintiff names Nurse Barbee, Physician's Assistant Timothy Adesanya, Graham's Chief Medical Officer Dr. Francis Kayira, Graham's Warden Craig Foster, and Wexford's Risk Manager Stephan Ritz as Defendants and seeks $500,000 in compensatory damages and $500,000 in punitive damages against each Defendant.

On June 6, 2018, presumably for symptoms of numbness and difficulty walking, Plaintiff was seen by Defendant Nurse Barbee during a sick call. She allegedly did not conduct a physical exam but found Plaintiff's gait to be steady and his grip strength to be equal.

On June 7, 2018, presumably for the same symptoms presented to Nurse Barbee, Plaintiff was seen by Defendant Adesanya, a Physician's Assistant. He allegedly took notes but did not physically examine Plaintiff, believing that he was faking his symptoms. At one point during the visit, Adesanya remarked, "I don't know about this numbness. I think you are trying to get over on me." (Doc. 31 at 8).

Plaintiff attended five additional sick calls on 6/12/18, 6/27/18, 6/28/18, 7/5/18, and 7/13/18 before first seeing Defendant Dr. Francis Kayira on July 13, 2018. Dr. Kayira prescribed physical therapy on July 13, 2018, which Plaintiff believes was a "blatantly inappropriate course of treatment for a severely compressed spinal cord" and that further diagnostic testing should have been done, although there is no allegation that Dr. Kayira was aware of Plaintiff's underlying diagnosis. *Id.* at 6.

On July 18, 2018, Plaintiff approached Defendant Warden Foster in the chow hall and expressed concerns about his course of treatment, to which Foster replied, "I'm not a doctor, what do you expect me to do about it?"

Without specifying the date, allegedly Dr. Kayira ordered Plaintiff to be isolated in the health care unit from July 30, 2018 until his discharge on August 9, 2018. Despite exhibiting neurologic symptoms, Plaintiff alleges that he was discharged into the general population and given a lower bunk permit.

On August 2, 2018, Wexford's Risk Manager, Stephan Ritz, allegedly denied approval for a consultation with an outside specialist, ordered Plaintiff to continue physical therapy, directed that he be observed by security, and that his case be "re-presented" in three weeks or less.

On September 13, 2018 and September 26, 2018, Plaintiff informed Dr. Kayira that his condition was worsening, and physical therapy was ineffective. Dr. Kayira allegedly did not perform an exam, insisted that Plaintiff continue with physical therapy, failed to re-present Plaintiff's case to Defendant Ritz for review; and inaccurately noted in Plaintiff's medical records that he was in the infirmary for over a month, and no one observed any neurological symptoms. Additionally, during a sick call on September 26, 2018, Plaintiff told Dr. Kayira that physical therapy was ineffective and he was experiencing a neurological decline. Plaintiff asked for an MRI, but Dr. Kayira stated that Defendant Ritz previously denied the request for an MRI on August 2, 2018. Again, Dr. Kayira allegedly dismissed Plaintiff without conducting an exam and failed to re-present his case to Defendant Ritz for review.

On October 12, 2018, Plaintiff underwent an MRI at Hillsboro Area Hospital, revealing a serious spinal compression, which Plaintiff alleges could have resulted in quadriplegia or death.

After the MRI results were obtained, Plaintiff was seen by Dr. Kayira who declined to classify Plaintiff's condition as "urgent."

On November 21, 2018, Plaintiff was seen by Dr. Yoon Choi, a neurologist at the SIU Neuroscience Institute in Springfield, Illinois. Dr. Choi recommended immediate emergency surgery; however, Dr. Kayira ordered Plaintiff to return to prison even though he allegedly knew there could be serious consequences if treatment was delayed.

On December 18, 2018, Plaintiff allegedly began to suffer severe motor control dysfunction, spams, and tremors and was unable to move. Contrary to Dr. Choi's prior recommendation that Plaintiff be taken to the emergency room if his condition rapidly declined, Dr. Kayira prescribed muscle relaxers and returned Plaintiff to his cell. The following morning, Plaintiff was unable to walk and was taken to the health care unit, where he remained until undergoing spinal surgery on January 5, 2019.

## ANALYSIS

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996); *see also Pyles v. Fahim*, 771 F.3d 403, 411-12 (7th Cir. 2014) (healthcare providers may exercise their medical

judgment when deciding whether to refer a prisoner to a specialist). The failure to refer is deliberately indifferent only if "blatantly inappropriate." *Id*. at 411-12. Denying a referral in favor of "easier and less efficacious treatment" may be blatantly inappropriate if it does not reflect sound professional judgment. *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016), *as amended* (Aug. 25, 2016).

Plaintiff identifies the dates of injury as June 6, 2018 to January 5, 2019. Plaintiff did not file his initial complaint until September 23, 2020. It is possible that his complaint is untimely. *See Draper v. Martin,* 664 F.3d 1110, 1113 (7th Cir. 2011) ("In Illinois, the statute of limitations period for § 1983 claims is two years, 735 ILCS 5/13-201"). To the extent Plaintiff may assert a continuing violation, the complaint is generally allowed, pursuant to any objection Defendants might later raise. *See Jervis v. Mitcheff*, 258 Fed.Appx. 3, at *5-6 (7th Cir. Dec. 13, 2007) ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released."); *see also Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001).

Plaintiff alleges that Defendant Nurse Barbee charted his gait as steady and his handgrips as equal, even though she did not perform a physical exam on June 6, 2018. Plaintiff alleges the same lack of diagnostic procedure against the Physician's Assistant, Defendant Timothy Adesanya. In that regard, he alleges that Defendant Adesanya took notes but did not physically examine Plaintiff on June 7, 2018. At one point during the visit, Adesanya allegedly remarked, "I don't know about this numbness. I think you are trying to get over on me." (Doc. 31 at 8). Without additional context, these allegations fail to state a claim for deliberate indifference to a serious medical need. As to both Defendants, the paltry allegations pled are insufficient to allow the Court to reasonably infer that a more extensive physical examination was required to properly attend to

Plaintiff's medical concerns then presented to these Defendants. Plaintiff will be allowed to amend his second amended complaint in that regard. Defendants Barbee and Adesanya are DISMISSED without prejudice.

Plaintiff's claim that Defendant Francis Kayira, Graham's Chief Medical Officer, formulated an ineffective physical therapy plan falls short of pleading the culpable state of mind required for deliberate indifference. However, Plaintiff will be allowed to proceed on his claim that Dr. Kayira failed to properly diagnose and treat appropriately his medical needs on September 13, 2018 and September 26, 2018, when Plaintiff informed Dr. Kayira that physical therapy was having no effect and that his condition was worsening.

Plaintiff's claim that Dr. Kayira did not re-present Plaintiff's case for an outside consultation as contemplated by Defendant Stephan Ritz, Wexford's Risk Manager, on September 13, 2018 and September 26, 2018 fails to state a claim as Plaintiff has pled nothing to support that Dr. Kayira knew he was required to re-present Plaintiff's case to Defendant Ritz for review.

While Plaintiff objected to Dr. Kayira discharging him from the health care unit without further diagnosis on August 9, 2018, Plaintiff does not allege that he was receiving any particular treatment there and was harmed by being discharged.

Plaintiff claims that Dr. Kayira delayed medical treatment by failing to classify his condition as "urgent" and by not obtaining a consultation with a specialist until November 21, 2018, after he underwent an MRI on October 12, 2018, showing a serious spinal compression. Plaintiff also claims that Dr. Kayira ordered Plaintiff to return to prison on November 21, 2018, even though Dr. Choi, a consulting neurologist, recommended immediate emergency surgery. It is unclear at this early stage in the litigation process and without the benefit of discovery, whether Dr. Kayira was responsible for obtaining a consultation with a specialist, and if so, whether a five-

to six-week delay between the MRI and a consultation with a specialist based on an alleged failure to classify a condition as "urgent" would constitute deliberate indifference. Similarly, it is also unclear if Dr. Kayira was responsible for ordering Plaintiff to go back to prison on November 21, 2018, rather than having immediate emergency surgery as Dr. Choi recommended. The Court will allow Plaintiff to proceed on a deliberate indifference claim against Dr. Kayira based on these allegations. The consequential connection between the alleged delay and some harm to Plaintiff will be a required showing by Plaintiff at summary judgment or at trial.

Plaintiff alleges that he suffered severe motor control dysfunction, spasms and tremors, and was unable to move on December 18, 2018. Rather than having Plaintiff taken to the emergency room as Dr. Choi recommended if his condition worsened, Dr. Kayira gave Plaintiff muscle relaxers and ordered him to return to his cell. Without supporting allegations that Dr. Choi spoke with Dr. Kayira or that Dr. Kayira was aware of this recommendation, Plaintiff's claim that Dr. Kayira disregarded Dr. Choi's recommendation by failing to have Plaintiff taken to the emergency room on December 18, 2018, fails to state a claim.

Plaintiff alleges that he spoke with Warden Craig Foster in the chow hall and told him about concerns related to his course of medical treatment. As a non-medical prison official, Warden Foster is entitled to rely on the opinions of medical staff. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). "If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). When the conversation with Warden Foster occurred on July 18, 2018, Plaintiff was under the care of medical staff. "[T]o be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). There is no

7

respondeat superior culpability under § 1983. If state prison officials are named, they must be named in their individual capacities, and Plaintiff must allege that the official personally participated in the deprivation or was deliberately reckless as to the misconduct of subordinates or was aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Based on the paltry allegations in Plaintiff's complaint, the Court finds that he has failed to state claim. Defendant Foster is DISMISSED without prejudice.

Finally, Plaintiff alleges that Defendant Stephan Ritz, Wexford's Risk Manager, denied approval on August 2, 2018, for Plaintiff to receive an MRI and a consultation with an outside specialist and ordered him to continue with physical therapy. A physician is liable for a failure to refer only if that decision is "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 411–12 (7th Cir. 2014). The physician must have a "sufficiently culpable state of mind," that he actually knew of a substantial risk of serious harm and consciously disregarded it. *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). In the absence of allegations showing that Ritz is a physician, the Court cannot determine at this juncture whether Ritz's initial refusal in August 2018 was blatantly inappropriate or simply beyond his competency as a layman. Plaintiff will be allowed to amend his second amended complaint in that regard. Defendant Ritz is DISMISSED without prejudice.

**IT IS THEREFORE ORDERED:**

1.      This case shall proceed on the deliberate indifference claim as stated above against Defendant Kayira. The Clerk is directed to reinstate Dr. Francis Kayira as a Defendant. All other claims are dismissed and will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of Court pursuant to Federal Rule of Civil Procedure 15.

2.      Plaintiff's claims against Defendants Barbee, Adesanya, Foster, and Ritz are dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Defendants Barbee, Adesanya, Foster, and Ritz are DISMISSED without prejudice. Plaintiff shall have 30 days from the entry of this Order to file an amended complaint. It is to be captioned "Third Amended Complaint" and is to include all of Plaintiff's claims against all Defendants, without reference to a prior pleading. Plaintiff's Third Amended Complaint will replace his Second Amended Complaint in its entirety. Piecemeal amendments are not accepted.

3.      Plaintiff has filed a Motion [36], inquiring as to the status of this case. [36] is rendered MOOT by this Order.

4.      Previously, the Court stayed the deadline for filing a dispositive motion on the issue of exhaustion and extended the deadline to 30 days after the Court issued its merit review of Plaintiff's Second Amended Complaint. (d/e 12/8/2021). Defendant Kayira is DIRECTED to file a dispositive motion on the issue of exhaustion, if appropriate, within 30 days of this Order. Pursuant to the Scheduling Order [29], discovery closes on June 28, 2022. Summary judgment motions are due on July 28, 2022.

5.      The Clerk is directed to send to Defendant Kayira, pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Second Amended Complaint; and 4) a copy of this Order.

6.      If Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on Defendant and will require Defendant to pay the full costs of formal service pursuant to Fed. R. Civ. P. 4(d)(2). If Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the complaint shall provide to the Clerk Defendant's

9

current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

      7.      Defendant shall file an answer within the time prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

      8.      Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed.  Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

      9.      Once counsel has appeared for Defendant, Plaintiff need not send copies of filings to Defendant or to Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendant is not available, Plaintiff will be notified and instructed accordingly.

      10.      Counsel for Defendant is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendant shall arrange the time for the deposition.

      11.      Plaintiff shall be provided a copy of all pertinent medical records upon request.

12.     Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

13.     The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.


ENTERED: May 10, 2022

                                        s/ Joe Billy McDade
                                        Joe Billy McDade
                                        U.S. District Court Judge