UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NICHOLAS CHITTICK, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No.: 20-cv-3252-JBM |
| ) | |
| FRANCIS KAYIRA, et al., ) | |
| ) | |
| Defendants. ) | |

## MERIT REVIEW ORDER – THIRD AMENDED COMPLAINT

Plaintiff, proceeding *pro se* and currently incarcerated at Robinson Correctional Center, files a Third Amended Complaint alleging deliberate indifference to his serious medical needs while previously housed at Graham Correctional Center ("Graham"). (Doc. 45). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### FACTS

While at Graham, Plaintiff began experiencing a crescendo of physical symptoms which underlies his allegation that he suffered through a severe spinal cord compression in his cervical spine. Despite frequent examinations beginning on June 6, 2018, and the eventual referral to a

1

specialist, Plaintiff alleges that his treatment consisted of little more than the observation of his worsening condition until he received surgery on January 2, 2019. Plaintiff claims that the delay in appropriate medical treatment caused substantial harm and irreversible neurologic injury in violation of the Eighth Amendment. Plaintiff names Graham's Chief Medical Officer Dr. Francis Kayira, Graham's Warden Craig Foster, and Wexford's Risk Assessment Manager Dr. Stephen Ritz as Defendants[1] and seeks $500,000 in compensatory damages and $500,000 in punitive damages against each Defendant.

Plaintiff attended seven sick calls on 6/6/18, 6/7/18, 6/12/18, 6/27/18, 6/28/18, 7/5/18, and 7/13/18. Dr. Kayira ordered Plaintiff to undergo physical therapy on July 19, 2018, which Plaintiff believes was a "blatantly inappropriate treatment [for a then undiagnosed] severe spinal cord compression." (Doc. 45 at 6). He also alleges that Dr. Kayira's decision to prescribe physical therapy was made pursuant to Wexford's cost reduction policies and did not reflect sound professional judgment.

Plaintiff's mother called and wrote to Warden Foster and other prison officials regarding his condition, but her calls and letters went unanswered. In addition, Plaintiff wrote to Warden Foster, Assistant Warden Patricia Coke, and Health Care Unit Administrator Stephanie Howard, but Warden Foster never responded. Plaintiff approached Warden Foster in the inmate chow hall on July 18, 2018, and informed him that his neurologic health was declining rapidly and that he was being largely ignored by medical staff. Warden Foster replied, "I'm not a doctor, what do you expect me to do about it?" *Id.* at 4.

Plaintiff also alleges tangentially that there were other unspecified inadequacies with the health care unit that suggested a pattern of defective medical care at Graham. Plaintiff claims that

---

[1] Of course, it is Plaintiff's burden to prove this claim of treatment delay by verifying medical evidence at summary judgment and at any trial. *See Langston v. Peters*, 100 F.3d 1235 (7th Cir. 1996).

2

Warden Foster had knowledge of these inadequacies and that his failure to take steps to correct them caused Plaintiff's injury.

On or about July 30, 2018, Plaintiff was treated by Andrew Kamp, a physical therapist at Hillsboro Area Hospital. Plaintiff alleges that Mr. Kamp "expressed misgivings about the appropriateness of physical therapy in Plaintiff's case, and remarked in his notes that further diagnostic medical evaluation would be indicated should Plaintiff continue to decline." *Id.* at 6.

When Plaintiff returned from physical therapy on July 30, 2018, Dr. Kayira allegedly had Plaintiff placed in a sweltering segregation status/suicide watch cell with no air conditioning or electricity for what Dr. Kayira termed "observation" in the health care unit. *Id.* at 7. Plaintiff was held in this cell for 10 days and did not receive medical treatment or an evaluation. On August 9, 2018, Plaintiff was discharged to the general prison population, over his objection. Dr. Kayira prescribed a lower bunk permit and expressed doubt that Plaintiff had neuromuscular issues. Plaintiff alleges that Dr. Kayira may not have been aware of his exact malady, but Dr. Kayira was certainly aware that Plaintiff was afflicted with a serious medical condition that bore further investigation due to (1) the lower bunk permit; (2) an x-ray report dated 6/15/2018 that showed end plate sclerosis, disc space narrowing, and osteophyte formation at the site of Plaintiff's spinal compression; and (3) physical therapist Andrew Kamp's documented concerns. Plaintiff alleges that Dr. Kayira's decision to discharge Plaintiff from the health care unit on August 9, 2018, without further diagnostic medical evaluation did not reflect sound professional judgment, delayed appropriate treatment, and caused injury.

On August 2, 2018, Dr. Stephen Ritz, the Risk Assessment Manager for Wexford Health Sources, Inc., allegedly denied approval for Plaintiff to receive a neurology consultation with an outside specialist. Instead, Dr. Ritz ordered that Plaintiff be observed by security and that his case

be "re-presented" in three weeks or less. Plaintiff alleges that Dr. Ritz's denial of a consultation with an outside specialist was made pursuant to Wexford's cost reduction policies. Plaintiff alleges further that Dr. Ritz's decision was not based on sound professional judgment, as Plaintiff was fully functional and athletic before the sudden onset of neurologic dysfunction, and x-rays revealed osteophyte formations at the site of the spinal compression. Plaintiff asserts that Dr. Ritz's failure to refer him to a specialist delayed appropriate treatment.

During additional sick calls with Dr. Kayira on September 13 and 26, 2018, Plaintiff informed Dr. Kayira that physical therapy was ineffective and his condition was worsening. Dr. Kayira allegedly did not perform an examination, insisted that Plaintiff continue with physical therapy, and failed to re-present Plaintiff's case to Dr. Ritz for review, despite knowledge of Dr. Ritz's prior order on August 2, 2018 to re-present Plaintiff's case in three weeks or less. Additionally, during the sick call on September 26, 2018, Dr. Kayira informed Plaintiff that he would not receive an MRI, according to the Medical Special Service Referral Denial form dated August 6, 2018. Plaintiff alleges that Dr. Kayira's failure to conduct a physical examination on September 13 and 26, 2018 or to re-present his case for review to Dr. Ritz delayed appropriate treatment.

On October 3, 2018, an appointment was scheduled for Plaintiff to receive an MRI on October 12, 2018. Plaintiff does not know who made the appointment. On October 5, 2018, Dr. Kayira and Dr. Ritz performed a collegial review to discuss Plaintiff's case, at which time the MRI was approved. On October 12, 2018, Plaintiff went to the Hillsboro Area Hospital for an MRI, which revealed a severe spinal compression with spinal cord injury.

Plaintiff alleges that Dr. Kayira failed to classify Plaintiff's condition as urgent after the MRI, despite knowledge that Plaintiff had been diagnosed with a severe spinal compression, which

4

Plaintiff asserts is an emergency medical condition. Due to Dr. Kayira's failure to classify Plaintiff's condition as urgent, an appointment with a neurologist was not scheduled until November 21, 2018, more than one month after the MRI.

On November 21, 2018, Plaintiff was seen by Dr. Yoon Choi, a neurologist at the SIU Neuroscience Institute in Springfield, Illinois. Upon inspection of Plaintiff's MRI, Plaintiff alleges that Dr. Choi "let out an audible gasp." *Id.* at 10. She recommended immediate referral to a neurosurgeon and emergency surgery and recommended that Plaintiff should be taken to the emergency room if his symptoms worsened. Plaintiff alleges that Dr. Choi wrote her recommendations on a Special Medical Service form, which Dr. Kayira signed. Dr. Kayira ordered Plaintiff return to Graham to await collegial review and approval, despite Dr. Kayira's knowledge of the seriousness of Plaintiff's condition.

On November 30, 2018, Plaintiff's mother contacted Dr. Choi by email. Dr. Choi allegedly called Graham to inquire why an appointment for Plaintiff had not been made. She also informed health care staff that Plaintiff needed to see a neurosurgeon as soon as possible and that Plaintiff should be taken to the emergency room if his condition worsened. According to Plaintiff's medical files dated November 30, 2018, the Health Care Administrator and Dr. Kayira were notified of Dr. Choi's call.

On December 13, 2018, Plaintiff attended a consultation with Dr. Jose Espinosa, a neurosurgeon, at SIU Neuroscience Institute. Dr. Espinosa allegedly remarked that Plaintiff was "one slip and fall away from quadriplegia or death" due to the severity of his spinal cord compression. *Id.* at 11. Dr. Espinosa ordered that Plaintiff wear a cervical collar whenever ambulating. Dr. Espinosa noted in Plaintiff's medical records that because Plaintiff was incarcerated, he would have to wait for approval for surgery from the prison system.

On December 18, 2018, at approximately 8:00 p.m., Plaintiff allegedly began to suffer severe motor control dysfunction, spasms, and tremors and was unable to walk. Plaintiff was taken to the health care unit on a stretcher, and Dr. Kayira was contacted at home. Despite knowledge of the seriousness of Plaintiff's condition and Dr. Choi's recommendation that Plaintiff be taken to the emergency room if his condition worsened, Dr. Kayira declined to send Plaintiff to the hospital, prescribed Robaxin (muscle relaxer), and ordered that Plaintiff be observed and returned to his cell. Correctional Officer Kershaw and an unidentified officer took Plaintiff to his cell in a wheelchair and helped him into his bunk. The following morning, Plaintiff returned to the health care unit, where he remained until undergoing spinal surgery on January 2, 2019. Plaintiff alleges that Dr. Kayira's decision not to send him to the emergency room when his condition worsened constituted deliberate indifference in violation of the Eighth Amendment.

**ANALYSIS**

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996); *see also Pyles v. Fahim*, 771 F.3d 403, 411-12 (7th Cir. 2014) (healthcare providers may exercise their medical judgment when deciding whether to refer a prisoner to a specialist). The failure to refer constitutes

deliberate indifference only if it was "blatantly inappropriate." *Id*. at 411-12. Denying a referral in favor of "easier and less efficacious treatment" may be blatantly inappropriate if it does not reflect sound professional judgment. *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016), *as amended* (Aug. 25, 2016).

Plaintiff states that the events described in his Third Amended Complaint occurred between June 6, 2018 and January 5, 2019. (Doc. 45 at 3). Plaintiff did not file his initial complaint until September 23, 2020. (Doc. 1). It is possible that his complaint is untimely. *See Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) ("In Illinois, the statute of limitations period for § 1983 claims is two years, 735 ILCS 5/13-201"). To the extent Plaintiff may assert a continuing violation, the complaint is generally allowed, pursuant to any objection Defendant might later raise. *See Jervis v. Mitcheff*, 258 F. App'x 3, 5-6 (7th Cir. 2007) ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released."); *see also Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001).  !

**Dr. Francis Kayira**

Plaintiff's conclusory allegation that Dr. Kayira formulated a "blatantly inappropriate" physical therapy treatment plan on July 19, 2018, without more supporting facts, falls short of pleading the culpable state of mind required for deliberate indifference. *See Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021) ("It is not enough that the plaintiff simply believes the treatment was ineffective or disagrees with the doctor's chosen course of treatment."). After July 19, 2018, Dr. Kayira's course of treatment is described in subsequent vignettes of allegedly inappropriate medical treatment eventually culminating with a referral to a specialist for corrective surgery in

January 2019; this holistic course of medical treatment is the gravamen of Plaintiff's overarching claim that the delay in appropriate medical treatment caused him harm.

**<u>Warden Craig Foster</u>**

Plaintiff also seeks to hold Warden Foster liable for deliberate indifference to his serious medical needs. Plaintiff alleges that his mother attempted to write and call Warden Foster and other prison officials concerning Plaintiff's condition, but her calls and letters went unanswered. Plaintiff claims that he also wrote to Warden Foster but did not receive a response. Plaintiff states that he approached Warden Foster in the inmate chow hall on July 18, 2018 and informed him about his condition and that he was being ignored by medical staff.

"[I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett*, 658 F.3d at 755 (citing *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). Here, the Court finds that a passing conversation in the inmate chow hall and letters mailed to the Warden's office and to other prison officials, without additional supporting allegations, do not rise to the level of deliberate indifference in violation of Eighth Amendment. *See Antonelli*, 81 F.3d at 1427. Plaintiff does not allege that he followed institutional policy by submitting an emergency grievance to Warden Foster based on the allegedly inappropriate medical care, nor is there any indication that Warden Foster was personally aware of Plaintiff's spinal compression or had a reason to believe that Plaintiff may not have been receiving adequate medical treatment. As such, the Court finds that Plaintiff fails to state a deliberate indifference claim against Warden Foster. He also fails to state a claim based on his allegations that there were other unidentified inadequacies regarding Graham's health care unit and that Warden Foster failed to take action to correct those deficiencies. *See* Fed. R. Civ. P. 8.

Warden Foster is DISMISSED for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff has had multiple opportunities to plead a claim against Warden Foster and has failed to do so. Therefore, the dismissal of Warden Foster is with prejudice, as any amendment would be futile.

**Dr. Stephen Ritz**

Finally, Plaintiff alleges that Dr. Ritz, Wexford's Risk Assessment Manager, was deliberately indifferent to his serious medical needs by denying approval for Plaintiff to receive a neurology consultation from an outside specialist on August 2, 2018. A physician is liable for a failure to refer only if that decision is "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 411-12 (7th Cir. 2014). The physician must have a "sufficiently culpable state of mind," that he actually knew of a substantial risk of serious harm and consciously disregarded it. *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

The Court finds that Plaintiff failed to plead sufficient facts to establish a deliberate indifference claim against Dr. Ritz based on the denial of a neurological referral on August 2, 2018. Plaintiff admits that Dr. Ritz ordered Plaintiff to be observed and for his case to be re-presented in three weeks or less. The fact that Plaintiff's case was not re-presented within that timeframe does not make Dr. Ritz liable for deliberate indifference. Dr. Ritz is DISMISSED for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff has had multiple opportunities to plead a claim against Dr. Ritz and has failed to do so. Therefore, the dismissal of Dr. Ritz is with prejudice, as any amendment would be futile.

Finally, although Plaintiff makes *Monell*-type allegations, he does not directly plead a claim against Wexford or name Wexford as a Defendant. He asserts only that physical therapy was prescribed and a consultation with an outside specialist was initially denied due to Wexford's cost

reduction polices. Plaintiff does not assert that this policy was unconstitutional or that Wexford applied it in an unconstitutional manner. As there is no *respondeat superior* liability under § 1983, Wexford cannot be held liable for the acts of its employees unless they acted pursuant to an unconstitutional policy, practice, or custom. *Salcedo Vazquez v. Nwaobasi*, No. 13- 606, 2015 WL 7177231, at *7 (S.D. Ill. Nov. 16, 2015) (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015)). Plaintiff does not sufficiently plead a claim against Wexford under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

**IT IS THEREFORE ORDERED:**

1. This case shall proceed on the deliberate indifference claim as stated above against Defendant Kayira. All other claims are dismissed and will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of Court pursuant to Federal Rule of Civil Procedure 15.

2. Defendants Craig Foster and Stephen Ritz are DISMISSED, with prejudice.

3. Previously, the Court stayed the deadline for filing a motion on the issue of exhaustion. Defendant Kayira may file a motion on the issue of exhaustion within 30 days of the entry of this Order, if appropriate. Discovery closes on October 28, 2022. Summary judgment motions are due on November 28, 2022.

4. The Clerk is directed to send Defendant Kayira, pursuant to this District's internal procedures, a copy of the Third Amended Complaint and a copy of this Order. A Second Request for Waiver of Service and Notice of Lawsuit was previously sent to Defendant Kayira on June 7, 2022. (Doc. 46). The Waiver has not yet been executed.

ENTERED: June 22, 2022

s/ Joe Billy McDade  
Joe Billy McDade  
U.S. District Court Judge