UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| NICHOLAS CHITTICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20-3252 |
| | ) | |
| FRANCIS KAYIRA, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, proceeding pro se and presently incarcerated at Robinson Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment claim for deliberate indifference to a serious medical need. On March 20, 2023, Defendant filed a motion for summary judgment, which is now fully briefed. (Doc. 83). The presiding judge referred the motion to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Text Order entered May 26, 2023. The Court recommends that Defendant's motion be granted.

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**FACTS**

Plaintiff addressed only the facts that he disputes in his summary judgment response. (Doc. 86). The Court considers the facts to which Plaintiff did not respond undisputed for purposes of this report and recommendation. Fed. R. Civ. P. 56(e)(2). The Court also considers the portions of the record not cited by the parties. Fed. R. Civ. P. 56(c)(3).

Plaintiff was incarcerated at Graham Correctional Center ("Graham") during all times relevant. UMF 1. Defendant Kayira was a physician at the facility. UMF 2.

Plaintiff reported numbness and weakness in his right side during an examination with a nurse conducted on June 6, 2018. UMF 5. The nurse wrote in Plaintiff's medical records that Plaintiff's hand grips were equal, that his range of motion was within normal limits, and his gait was steady. (Doc. 83-3 at 22). Plaintiff avers that the nurse did not conduct an examination on that date, but he concedes that the nurse referred him to the physician's assistant and that he had not reported any spinal issues prior to that date. (Doc. 86 at 46, ¶ 1); UMF 7, 8. The physician's assistant referred Plaintiff to Defendant Kayira the next day. UMF 9.

On June 12, 2018, Defendant Kayira conducted an examination that resulted in Defendant Kayira's order for an EKG to rule out cardiac issues, bloodwork, and x-rays of Plaintiff's cervical spine (C-spine) and lumbosacral spine (L-S spine). UMF 11. X-rays taken the next day disclosed the following:

CERVICAL SPINE: AP and lateral/three view.

The prevertebral soft tissues are unremarkable.

There is a straightening of the cervical spine. No malalignment.

> Multilevel degenerative disc disease is demonstrated. There is disc space narrowing, end plate sclerosis and small anterior osteophyte formation at C4-C5, C5-C6, and C6-C7.
>
> LUMBAR SPINE: AP and lateral/three views.
>
> The paraspinal soft tissues are unremarkable.
>
> No acute compression fracture. No malalignment.
>
> Mild diffuse disc space narrowing. There is end plate sclerosis and anterior osteophyte formation. There is facet joint sclerosis in the lower lumbar spine.

(Doc. 83-10 at 33). The EKG performed June 14, 2018, disclosed no cardiac issues. UMF 17.

Defendant Kayira prescribed naproxen during an examination conducted July 13, 2018, to address pain associated with degenerative disc disease and osteoarthritis. UMF 21-24. He also submitted a request to refer Plaintiff to physical therapy.[1] UMF 20. Wexford officials approved the request on July 19, 2018. UMF 25. Both treatments are standard for the type of condition Plaintiff reported. UMF 24.

The physical therapist's evaluation from an examination conducted July 30, 2018, indicated that Plaintiff exhibited impaired balance, decreased abilities to negotiate stairs and ambulate, and abnormal gait mechanics. (Doc. 83-8 at 7). The physical therapist provided Plaintiff with a "home exercise program" for him to perform at the prison. He assessed Plaintiff's condition as follows:

> The patient is displaying weakness, but is also reporting a fast moving progressive decrease in function, balance, bladder and bowel function, genitourinary function, with associated paresthesias and reduced motor control, which would seem to be indicative of a condition that may or may not respond to conservative rehabilitative interactions. If his condition continues to decline with consistent completion of his assigned Home Exercise Program, further diagnostic medical evaluation would be indicated.

---

[1] Wexford Health Sources, Inc., the private company contracted to provide medical services in Illinois prisons, must approve any referrals for treatment outside of the prison. The process to obtain approval is called "collegial review."

*Id.* at 8. Defendant Kayira admitted Plaintiff to the infirmary for observation upon his return to the prison. UMF 27. His notes from an encounter he had with Plaintiff later that day indicate that he observed "no apparent neurological findings. No muscle atrophy. Ambulates well then suddenly staggers."[2] (Doc. 83-4 at 7). He indicated a "possible neurological disease," ordered bloodwork, and noted he would consider a neurology referral based on further observation. *Id.*

Defendant Kayira submitted a request to discuss a neurology consult on August 1, 2018, and he discussed it with Wexford officials in collegial review the next day. UMF 31, 32. Wexford officials opted for additional bloodwork and x-rays of Plaintiff's thoracic spine (T-spine). UMF 33. The alternative care plan also indicated that Defendant Kayira should re-present Plaintiff's situation to collegial review in three weeks or less. (Doc. 83-8 at 18). X-rays of Plaintiff's T-spine taken the same day disclosed "minimal end plate degenerative change, but no compression fracture or subluxation." UMF 35.

Plaintiff remained in the infirmary until August 9, 2018. UMF 46. According to medical notes, which Plaintiff contends are false, the nurses observed Plaintiff limping at times, but that he was otherwise able to move around and carry a food tray without difficulty. (Doc. 83-4 at 8-16). Plaintiff completed his physical therapy exercises during this time. UMF 38. Plaintiff states that he could barely walk when Defendant Kayira discharged him from the infirmary. (Doc. 86 at 48, ¶ 10). Defendant Kayira issued Plaintiff low-bunk and low-gallery permits upon discharge. *Id.* at 49, ¶ 16.

Defendant Kayira instructed Plaintiff to continue with his physical therapy plan with nurse supervision following an examination conducted on August 23, 2018, and he ordered a follow-up appointment in three weeks. UMF 52. Plaintiff avers that he told Defendant Kayira at

---

[2] Plaintiff disputes the lack of observed neurological findings.

this examination and the follow-up exam conducted September 13, 2018, that physical therapy had not been effective. (Doc. 86 at 49, ¶¶ 17-19). He states that he "was clearly having extreme difficulty walking" and experiencing other motor control issues at both examinations. *Id.* Defendant Kayira instructed Plaintiff on September 13, 2018, to continue with physical therapy. UMF 56.

Defendant Kayira submitted a request dated September 20, 2018, for an MRI of Plaintiff's brain and spine, stating that Plaintiff's reported numbness was indicative of early multiple sclerosis. (Doc. 83-8 at 19). Wexford officials denied the request following a collegial review conducted on September 25, 2018, stating that Plaintiff "needs labs, full onsite neuro exam findings; security observing issues? Re[-]present in 4 weeks or less." (Doc. 83-8 at 21). Wexford officials reconsidered and approved the request on October 2, 2018. UMF 58; (Doc. 83-8 at 20).

An MRI conducted October 12, 2018, disclosed no issues with Plaintiff's brain and no findings that suggested multiple sclerosis. UMF 60-61. The MRI of Plaintiff's C-spine taken the same day showed severe canal and forminal stenosis at C4-5 and C5-6 from degenerative disc disease. UMF 62-64. The radiologist's report indicated that Plaintiff showed posterior disc herniation at C4-5 and posterior disc osteophyte complex at C5-6 with spinal cord impingement. UMF 64-65. The radiologist found no convincing evidence of demyelinating disease, a condition that suggests multiple sclerosis. UMF 66. Defendant Kayira thereafter referred Plaintiff for a neurology consult. UMF 68. Defendant Kayira discussed the MRI results with Plaintiff on October 19, 2018, noted Plaintiff's complaints of hand grip weakness, and prescribed medication to address Plaintiff's complaints of constipation. UMF 68-69; (Doc. 83-2 at 8, ¶ 45).

The neurologist that Plaintiff saw on November 21, 2018, recommended referral to a neurosurgeon within two-to-three weeks and an MRI of Plaintiff's T-spine within two weeks. UMF 70-71; (Doc. 83-8 at 37). The neurologist also advised that Plaintiff needed to "go to ER if [his] neurological symptoms – sensory symptoms or weakness in arm and legs or bowel/bladder symptoms – get worse rapidly." (Doc. 83-8 at 38); UMF 72. Defendant Kayira sent an urgent request for a neurosurgeon referral and the recommended MRI on November 27, 2018. UMF 75-76. An MRI of Plaintiff's T-spine taken November 30, 2018, indicated stenosis at T11-12 and small disc protrusions with ventral cord abutting or indentation at T2-3, T3-4, T6-7, and T7-8. UMF 78-80. Defendant Kayira discussed the results with Plaintiff on December 3, 2018, and prescribed naproxen for pain. UMF 83, 85. Plaintiff had already been scheduled to see the neurosurgeon at that time. UMF 84.

The neurosurgeon recommended surgery following an examination conducted December 13, 2018. UMF 87. Per the neurosurgeon's recommendations, Defendant Kayira ordered a pre-surgical chest x-ray, EKG, and a cervical collar for Plaintiff to wear while awaiting surgery. UMF 88-93. Wexford officials approved surgery on December 20, 2018; officials scheduled the surgery for January 2, 2019. UMF 100-01.

According to the medical records, Plaintiff reported "full body muscle spasm" to a nurse on December 18, 2018. (Doc. 83-5 at 24). The nurse noted that Plaintiff was unable to walk during the spasms; she provided a muscle relaxer and observed Plaintiff for one hour per Defendant Kayira's telephone instructions. *Id.* The nurse noted that Plaintiff could walk after receiving the medication, and that he returned to his cell. *Id.* at 23. Plaintiff disputes that he was able to walk, and he testified that he required a wheelchair to return to his cell and assistance

getting into his bunk. Pl.'s Dep. 79:12-17. Defendant Kayira admitted Plaintiff to the infirmary the next day, where he remained until his surgery. *Id.* 79:19-21.

Plaintiff had surgery on January 2, 2019. UMF 102. Officials housed Plaintiff in the infirmary for two weeks following surgery, facilitated Plaintiff's follow-up appointments with the neurosurgeon as necessary, ordered diagnostic testing, prescribed pain medication, and assigned a helper to assist Plaintiff with his daily tasks. UMF 103-16. Plaintiff experienced spasticity and pathological reflexes in his lower extremities following surgery, which, the neurosurgeon stated, could be expected. Pl.'s Dep. 70:19-24. The neurosurgeon opined in April 2019 that Plaintiff's condition had improved significantly. UMF 127. Defendant Kayira ordered the diagnostic tests and follow-up appointments with the neurosurgeon as recommended. UMF 103-136. Plaintiff transferred to another prison on August 28, 2019. UMF 138.

**ANALYSIS**

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). The parties do not dispute that Plaintiff suffered from an objectively serious medical need.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's

subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. Courts defer to treatment decisions made by medical professionals unless the evidence shows that "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

A treatment decision permits an inference that the medical provider acted with deliberate indifference only when the decision constitutes "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Petties*, 836 F.3d at 729 (internal quotations omitted). Persisting in a course of treatment known to be ineffective, failing to follow an existing protocol, delaying treatment without penological justification, and refusing to follow a specialist's recommendations may permit an inference that a medical professional failed to exercise the appropriate judgment. *Id.* at 729-30.

Plaintiff did not have a history of the symptoms he reported in June 2018. The x-rays Defendant Kayira ordered disclosed degenerative disc disease and osteoarthritis for which the physical therapy and pain medication he prescribed are common treatments. Upon the physical therapist's suggestion that Plaintiff's condition may be progressive and may not respond to physical therapy, Defendant Kayira admitted Plaintiff to the infirmary where medical staff was arguably in the best position to observe and respond to any rapid deterioration in Plaintiff's physical ability. Defendant Kayira sought a neurology consult the day after Plaintiff's physical therapy appointment, and Wexford officials' denial of this request cannot be held against him.

Accepting as true Plaintiff's testimony that he could not walk on August 9, 2018, when Defendant Kayira discharged him from the infirmary, the medical records available to Defendant Kayira did not disclose that Plaintiff had experienced any persistent physical issues that required a change in treatment. The record does not support a reasonable inference that Defendant Kayira knew that the medical records were inaccurate. After Plaintiff's symptoms had persisted for six weeks despite the physical therapy, Defendant Kayira requested additional diagnostic testing to determine whether multiple sclerosis was causing Plaintiff's issues; he was not responsible for Wexford's delay in approving the procedures.

Defendant Kayira referred Plaintiff to a neurologist after the MRIs disclosed what the Court assumes was a more serious condition than degenerative disc disease and osteoarthritis. Plaintiff saw the neurosurgeon and underwent the additional MRI within the timeframes the neurologist recommended, and Defendant Kayira thereafter followed the neurosurgeon's recommendations, including those made post-surgery. These facts do not permit a reasonable inference that Defendant Kayira was personally responsible for any delay in receiving treatment or that he failed to exercise the requisite professional judgment. Plaintiff's disagreement with the treatment provided or his desire for specific treatment is not enough to impose constitutional liability. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("[A]n inmate is not entitled to demand specific [medical] care."); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (a mere disagreement with the course of treatment, standing alone, is not sufficient to attach constitutional liability).

Plaintiff nonetheless asserts that Defendant Kayira should be held liable because he did not act fast enough—he points out that Defendant Kayira failed to re-present his case to collegial review as directed by Wexford officials on August 2, 2018, and he maintains that Defendant

Kayira acted with deliberate indifference on December 18, 2018, by failing to send him to the emergency room for emergency surgery.

Defendant Kayira apparently failed to re-present Plaintiff's case as directed, but the record does not permit a reasonable inference that Defendant Kayira did so intentionally or that he disregarded a change in circumstances that subjected Plaintiff to increased risk of substantial harm. Defendant Kayira also did not personally observe Plaintiff's condition on December 18, 2018, and Plaintiff has not presented evidence suggesting that Defendant Kayira was aware of any information outside of that disclosed in the treating nurse's medical notes. Stated differently, the record does not disclose that Defendant Kayira was aware of any facts suggesting that Plaintiff needed emergency surgery on that date.

The record does not support a reasonable inference that Defendant Kayira failed to exercise appropriate medical judgment or otherwise acted with deliberate indifference, even when the Court views the evidence in the light most favorable to Plaintiff and assumes the trier of fact would resolve all factual disputes in his favor. For these reasons, the Court recommends that Defendant's motion for summary judgment be GRANTED in Defendant's favor.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739

(7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered this 22nd day of August, 2023.

*s/Jonathan E. Hawley*
JONATHAN E. HAWLEY
UNITED STATES MAGISTRATE JUDGE
